Good morning, Your Honors. My name is Ji Xunyi, and I represent the petitioner. In this case, the immigration judge explicitly found the petitioner to be a credible witness, and the BIA did not disturb the IJ's favorable credibility determination. Now, the issue before the court is whether or not the petitioner suffered past persecution on account of his resistance to the coercive population control program in China. And the BIA, in finding – the BIA did not find that petitioner resisted the birth control policy in China, and the BIA could not be more mistaken. In examining whether or not – There are really two questions. One, did the petitioner resist the birth control policy? And two, was he the victim of persecution, the subject of persecution, because of that resistance? That's right, Your Honor. So in answering the first question first, whether or not the petitioner resisted the birth control policy, I think the answer is yes. In looking at the issue of whether or not resistance existed, we first must look at the plain meaning of the word resistance. And the dictionary definition of the word resistance includes passive or active opposition. And in this case, petitioner has demonstrated a pattern of resistance through his passive or active opposition to the birth control program in China. Resistance number one, he married his wife when the wife was underage for marriage. And number two, he and his wife attempted to have a second child in violation of the birth control policy. Is that the adoption of the second child, or did they actually – No, the pregnancy leading to the abortion. Oh, yes. That's the first abortion, only one abortion. Only one abortion, Your Honor. Okay. So there was a resistance by trying to have the child. Trying to have the child, having the marriage, underage marriage. And also petitioner resisted the birth control policy by adopting, taking in the abandoned female infant. Okay. So that's three acts you're talking about, one, the marriage, two, the pregnancy, which resulted in the abortion, and three, the adoption. Yes, Your Honor. And I think the list does not stop there. And then when the birth control officials were trying to look for petitioner or his wife for the sterilization, as well as for the imposition of the fine, and the petitioner and his wife went out hiding. So I believe the petitioner's hiding out from the birth control officials in itself is also a form of resistance. So that's your fourth act of resistance. Yes, Your Honor. So just with all this, Your Honor, I think any reasonable fact finder would be compelled to find resistance in this case. Even IG found resistance in this case, but the BIA did not adopt IG's finding in that aspect. Now the second issue is whether or not petitioner suffered past persecution. The BIA found no persecution in this case. The BIA relied on Gu versus Gonzalez. I think the BIA's reliance on Gu is misplaced because in Gu there's only one single isolated instance of detention and beating. But in this case, again, there's a pattern of mistreatment that the petitioner suffered. First of all, the very first one, because he married his wife when the wife was underage, he was forced to pay a fine of 2,000 RMB. And secondly, when his wife got pregnant for the second time in violation of the birth control policy, his petitioner's unborn child was killed. That's persecution number two. And number three, when the wife was forced to wear an IUD and he was forced to undergo mandatory periodical physical checkups, that's another form of mistreatment. And then when the petitioner took in the abandoned female infant and raised it as his own child, he and his wife were arrested, detained, and he was even kicked, physically abused once. And then when he and his wife went out hiding to avoid the enforcement of the birth control policy, the birth control officials went to his house to look for them. Unable to find them, they smashed the door lock, damaged the property, and on one occasion they pushed the petitioner's mother to the ground, causing her to bleed. So if we look at it, I agree with the government that the petitioner cannot just rely on forced abortion to qualify as a refugee. But if we look at the totality of this case, if we look at the cumulative effects of all the mistreatments, I think, again, any reasonable fact finder will be compelled to make a finding that the petitioner suffered past persecution in this case. Do you want to say the rest of it, Senator? Yes, thank you. And please, the Court, John Polk for the Attorney General. So, Stan? I thought I'd ask you in the beginning. This case was decided by the BIA just before our case of Jiang versus Holder. So the Board didn't have an opportunity to take that case into consideration. Don't you think it would be a good idea for us to remand the case to allow the Board to consider the effect of Jiang? We would respectfully submit not, Your Honor. Jiang is distinguishable. The mistreatment in Jiang was far different than what the petitioner faced in this particular case. In Jiang, first of all, the petitioner tried to get an underage marriage. He wasn't permitted to do so. He proceeded. The Chinese authorities came to the home, actually arrested Jiang and his wife, incarcerated Jiang, kept him in confinement while they formed a forced abortion procedure on the wife. Secondly, Jiang, undeterred, wanted to engage in a traditional Chinese marriage. He attempted to do so. The Chinese authorities came to the home, disrupted that. He and his future wife fled. And then there was a third. They were in a situation where Jiang was participating in a religious worship service. And in that particular case, the Chinese authorities disrupted the worship service, physically beat Jiang. And so Jiang eventually escaped. Those three incidences are extraordinarily different from the circumstances. They don't sound all that extraordinarily different. Maybe they're religious. In Jiang, the fine was 5,000 RMB. In this case, the fine was 1,500 RMB, just a little in excess of $200. The fine is one circumstance. Beg your pardon? The difference in the fine doesn't seem terribly. Well, I'm just inviting the court to consider that. No, certainly there are differences in the case. Yes. But all I'm saying is the leading case at the moment that relates to this type of problem that the petition is presenting hadn't been decided when the board acted. You may think that it's not necessary, and we may agree with you. But certainly it's a close case. It's a very similar case to the one today. And the board didn't have a chance to consider the latest law on the subject. But we don't necessarily agree with that. And certainly most cases can be distinguished in the facts from most other cases. But it is rather a close case to quite a similar case and the leading case at the moment, and the board didn't have a chance to consider it. I think it might be that the board would benefit from having had the opportunity to review that case before deciding this one. But there's no reason you shouldn't go ahead and make your argument as to why they're distinguished. Well, with all due respect, I mean, every time this court speaks, the board listens and it's always instructed to the board to have a case law that further defines the application of each of these principles. But before the agency, Petitioner had the burden to establish by preponderance the evidence that he suffered past persecution. He failed to do so before the immigration judge. He failed to do so before the board. And now as he concedes to the court, the evidence is a compelling evidence standard. So the standard of review is significant here. The court's well aware that many of these cases turn on the standard of review. And, Judge Reinhart, as you point out, there are facts in all of these cases that cut both ways. And there are facts in this case that cut both ways. But the issue ultimately we submit turns on the standard of review. Does the evidence compel the conclusion, compel the conclusion that no reasonable fact finder could find no other? Well, before that, you reach the question of did the board apply the right standard? Did it consider the factors that it was required to consider under the law? Did it consider whether the abortion, forced abortion, was, although not a dispositive factor, was a factor to be considered in determining whether there was persecution and whether there was a violation in the first place? Did you think the board considered that factor as part of its totality of the circumstances? We respectfully submit that the board did a nice job considering individually each of the aspects and then considering the totality of the circumstances. With regard to past persecution, past persecution is personal to each particular person. So the fact that a petitioner's mother or that his wife suffered an abortion, that in itself does not establish past persecution. It's a circumstance, but it's not a per se. Right, but is it a factor in the persecution? It is a factor. It is a factor. But the problem is it didn't look like they really looked at it like that, as a factor, as a consideration. Well, they spent some... This decision was decided just after the Attorney General came down with a change in policy where the law used to allow for per se eligibility. That's correct. And the policy changed as a result of the decision by the Attorney General. That's correct. So it looked like the fact that the wife had the abortion, had a forced abortion, wasn't giving much attention here. Again, if we look at these particular circumstances, what was the physical abuse? The physical abuse was that he was kicked once. Well, what about the abortion itself? I beg your pardon? What about the forced abortion? With regard to the forced abortion, in this particular circumstance, let's contrast it with Zhang. In Zhang, the Chinese authorities came and arrested Zhang and his cohabitant girlfriend, and they took them, they confined Zhang while they performed a forced abortion on the young lady. In this particular circumstance, Petitioner was working in another village and didn't find even out about the abortion until two days later. So, you know, that circumstance... No, that's a difference in fact. It is a difference in fact. Did the board consider in determining persecution, did it consider the fact of the forced abortion? I don't find that in its decision. Well, Your Honor, we would respectfully submit that in the full context of the decision, where they address at the threshold the wife's forced abortion, that that of course was a circumstance that the board considered. And the board was very careful to go through each of the circumstances. They mentioned the abortion. They mentioned it, but they didn't resolve it. They seemed to cast that aside as evidence of other resistance, didn't they? I mean, it's mentioned for sure, but they don't say, we reject it, we accept it, as evidence of other resistance. Well, I think it's significant not to conflate other resistance and past persecution. As Judge Reinhart said at the outset, there are two questions here. The question is whether there's other resistance or whether there's past persecution. That's where when I look at the decision, when I'm looking at the decision, and I look at it in two parts, and then I get to the part where they say, even assuming they considered mistreatment on account of other resistance, he is not established past persecution. And then they start when he was discovered to have illegally adopted a child and discusses whether that raises to the level of persecution. They discuss the fine. They discuss the fact that he was forced to hide in villages. But I don't find in there any mention of the forced abortion. You're reading the opinion, Your Honor, and it's not in that particular paragraph. We would invite the Court to consider that the Board, in writing the decision, having previously spent some time addressing that, it was clearly before the Board, no question, that the wife had suffered a forced abortion, and that's a most unfortunate and traumatic circumstance. Yes, and the question is, did the Board take that into account as part of its judgment on persecution? You know, as Judge Thomas says and Judge Pryor said, the law was changing rapidly at this point, and it's not really surprising that they wouldn't have considered that as a part of persecution at that point. And unfortunately, had it come three weeks later, they would have had Jang to consider. So, you know, we're restricted to what the Board says exactly. Often we could say, in reviewing this kind of a case, we could say what we think might be in the opinion or should have been, but we look at it in a very limited way that we're compelled to do, and we look at the opinion and just can read what it says, not what we think they may have had in mind. Well, the other point is the Court was the beneficiary of this Court's decisions in both Lee and Lynn. And in Lee and Lynn, the Court contrasted factually the facts that in Lee, in 2004, this young woman was insistent upon marrying and underage, and secondly, having a family. She verbally communicated that she wanted to have children, that she was going to get married. She was going to get married in spite of it, and she resisted a forced gynecological examination. In Lynn, similarly, where a brother was at home when Chinese authorities came to enforce the family planning policy, the brother physically opposed the Chinese authorities. So the Board was focusing on all these factors, and we would respectfully submit that they did so in the totality of the circumstances, and the petitioner has not established past persecution. My time is up, Your Honor. I just want to point out that the BIA did not only address abortion in the context of whether or not a petitioner suffered past persecution. The Board also failed to take into consideration the fine for the early marriage. That's the $2,000. The Board also failed to take into consideration that the petitioner's wife was forced to wear an IUD. So if we look at it again, I agree that abortion alone would not qualify a petitioner for refugee status, but if we look at the totality, the cumulative effects of all the mistreatments, the petitioner certainly suffered past persecution. You'd have to admit that in Chiang, the circumstances of direct persecution as to the petitioner were stronger than this case. Well, Your Honor, I turn to this not to agree, because in this case, the Board failed to take into consideration that the petitioner, finding that his wife has been in hiding for over a decade, I think that probably elevates petitioner's suffering much above what Chiang experienced. If you talk about the physical abuse, though, you'd have to... Chiang suffered a lot more. If your client was not physically present at the abortion, which is... not that he wouldn't have wanted to be, but that's... Yeah, you can look at it from that angle, yeah. Yes, Your Honor. But in this case... And also, another... I think there's another aspect I would like to bring to the Court's attention, that will be the well-founded fear of future persecution, because petitioner also testified that he would be subjected to sterilization because the local authorities were unable to find the wife, and the petitioner's testimony is credible, and his testimony is not a mere speculation. If we look at his credible testimony and combine with the country report background information, I think petitioner stopped at least one in ten chance that he will face future persecution in the form of forced sterilization. I think the Board, the government, in its brief, did not address that issue adequately. I think this also... By reminding this case to the Board, I think the Board should be reminded to address this issue, whether or not the petitioner has met his burden. The burden for future persecution is very low. It's one in ten chances, 10% chance. So I'm not saying that it's more likely than not that a petitioner will be forced to undergo sterilization. I'm just arguing that the record supports the finding that there is at least one in ten chance that he will be forcefully sterilized and promised to return to his home country. Thank you, Your Honor. The case is adjourned with at least a minute.
judges: Reinhardt, Thomas, Paez